UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

BRET MICHAELS,                                              Case No. 11-CV-2678 (PJS/JSM)

        Plaintiff,

v.                                                                                    ORDER

SHORELINE TOURS, a Canada corporation;
TIM TOWLE, an individual; and WILLIE
DONWELL, an individual,

        Defendants.

---

    Alan H. Maclin and Matthew R. Brodin, BRIGGS & MORGAN, P.A.; Brian A. Procel, MILLER BARONDESS LLP, for plaintiff Bret Michaels.

    Nicole M. Siemens and Bryan A. Welp, LINDQUIST & VENNUM PLLP, for defendants Shoreline Tours and Tim Towle.

    This case involves an employment agreement between musician Bret Michaels and promoter Willie Donwell. On August 23, 2010, Michaels and Donwell executed a contract under which Donwell agreed to pay Michaels $750,000 and Michaels agreed to perform two concerts on a "Super Cruise" promoted by Donwell. Donwell agreed to pay Michaels the full $750,000 even if the cruise were canceled and Michaels did not have to perform. The cruise was eventually canceled, but Michaels received only $250,000 of the $750,000 that Donwell owed him. Michaels has sued Donwell, seeking to recover the additional $500,000, as well as other damages.

    The problem for Michaels is that Donwell appears to have no money, so a judgment against Donwell is unlikely to do Michaels any good. For that reason, Michaels has also sued

Shoreline Charters & Tours, Inc. and its principal, Tim Towle (collectively "Shoreline").[1] Shoreline is a travel agency that was involved in planning the "Super Cruise." Michaels has pleaded a number of creative theories for why Shoreline — which was not a party to the contract and which made no promises to Michaels — should nonetheless be held liable to him for the $500,000 that he is owed by Donwell (as well as for other damages). For example, Michaels alleges that Donwell was secretly acting as Shoreline's agent when he signed the contract — and, alternatively, that before Donwell signed the contract, he secretly formed a joint venture with Shoreline and signed the contract as a representative of that joint venture.

This matter is before the Court on Shoreline's motion to dismiss [Docket No. 5] and Michaels's motion for leave to file an amended complaint [Docket No. 32]. The Court held a hearing on these motions at William Mitchell College of Law on the evening of March 14, 2012.[2] Having examined Michaels's proposed amended complaint carefully, the Court regards most of Michaels's claims against Shoreline as tenuous. But, at this stage of the litigation, Michaels has pleaded enough facts in the proposed amended complaint to plausibly assert that Shoreline and Donwell had some kind of legal relationship — whether it was an agency relationship with Shoreline as the undisclosed principal or an undisclosed joint venture (or both) — before Donwell and Michaels executed the employment agreement. Michaels has also pleaded enough facts to plausibly assert that Shoreline may be held liable to Michaels for fraud or breach of

---

[1] Michaels erroneously named "Shoreline Tours" as a defendant in the original complaint. The Court orders the Clerk to change the defendant's name from "Shoreline Tours" to "Shoreline Charters & Tours, Inc." on the docket of this case.

[2] The Court thanks Alan H. Maclin and Nicole M. Siemens for graciously agreeing to argue their motions at an evening hearing before an audience of several hundred law students.

contract because of its agency relationship or joint venture with Donwell.[3]  As the Court explained at the hearing, several facts pleaded in the proposed amended complaint support Michaels's theory, including:

- At or shortly after the time that the employment agreement was signed, Michaels and Donwell executed a contract addendum that named Shoreline as the "host travel agency."

- Donwell breached the employment agreement on the day that it was signed by failing to pay Michaels a $250,000 installment that was due on signing, suggesting that Donwell was in no financial position to make the financial commitments that he had just made to Michaels in the contract.

- Shortly after Donwell signed the employment agreement — a contract in which he promised to promote the "Super Cruise" — Donwell largely dropped out of sight, leaving Shoreline to act as the promoter of the cruise.

- Approximately one month after the employment agreement was signed, Shoreline used its own funds to pay Michaels the $250,000 that Donwell was supposed to have paid on signing.

- Just a few weeks after the employment agreement was signed, Shoreline guaranteed $2.7 million to Carnival Cruise Lines for the "Super Cruise."

---

[3]At the hearing, Shoreline conceded that if Donwell acted as Shoreline's agent in negotiating and signing the employment agreement, and if Donwell defrauded Michaels, then Shoreline could be held liable for that fraud.  Shoreline insisted, however, that it could not be held liable for breach of contract even if Donwell was acting as its agent in signing the contract with Michaels.

This is a curious proposition, and Shoreline has not cited — and the Court has not found — any authority supporting the proposition.  To the contrary, the Minnesota Supreme Court has implied that the undisclosed principal would be liable for breach of contract in these circumstances.  *See generally A. Gay Jenson Farms Co. v. Cargill, Inc.*, 309 N.W.2d 285, 293 (Minn. 1981) ("If the principal sends an agent to buy goods for him and on his account, it is not unreasonable that he should see that they are paid for.  Although the seller may consider the agent to be the principal, the actual principal knows better.") (internal quotations omitted).

- At the same time that it promised to pay $2.7 million to Carnival, Shoreline sought an insurance policy to cover its guarantee. In applying for that coverage, Shoreline represented to the insurer that it was essentially responsible for promoting the "Super Cruise" — something that Donwell had promised to do in the employment agreement.

It is very difficult to believe that Donwell would insert Shoreline into the contract — and that Shoreline would make such huge financial commitments and such sweeping representations — unless Shoreline had some kind of agreement in place with Donwell *before* Donwell executed the employment agreement with Michaels. For that reason, the Court will allow the fraud and breach-of-contract claims to go forward.

Michaels has asserted other claims against Shoreline. Shoreline's motion to dismiss those additional claims presents a close call. But the parties have to take discovery on the two most important claims, and that discovery will encompass the full scope of the relationship between Donwell and Shoreline — and the relationship between Donwell and Shoreline, on the one hand, and Michaels, on the other. Given that there is little to be gained by dismissing the additional claims at this time, and given that the Court would prefer to consider those claims in light of a fully developed factual record, the Court will deny Shoreline's motion to dismiss in its entirety. Shoreline can, of course, move for summary judgment following the close of discovery, if such a motion is warranted.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Shoreline's motion to dismiss [Docket No. 5] is DENIED.

2.  Michaels's motion for leave to file an amended complaint [Docket No. 32] is GRANTED.

3.  The Clerk of the Court is directed to change the name "Shoreline Tours" to "Shoreline Charters & Tours, Inc." on the docket of this case.

Dated: March 21, 2012                    s/Patrick J. Schiltz
                                         Patrick J. Schiltz
                                         United States District Judge